**WAMPLER, Plaintiff-Appellant v. STALEY, Defendant-Appellee.**

Ohio Appeals, Second District, Darke County.

No. 623.   Decided April 24, 1944.

Wilbur D. Spidel, Greenville, for plaintiff-appellee.
Murphy & Staley, Greenville, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment in favor of the plaintiff and against the defendant in the sum of $378.95 and costs, being the full amount sued for by plaintiff upon an alleged contract for work, labor, medicine and supplies furnished by him for defendant's decedent, Rebecca Hickle, from February 12, 1941, to May 30, 1941.

Ten errors are assigned. The first and second are errors in refusal to arrest the case from the jury at the conclusion of the plaintiff's case in chief and at the close of all of the testimony and to direct a verdict for the defendant. The third error, in refusal to give defendant's Special Charges Nos. 1 and 2 and, fourth, error in the general charge. Fifth and sixth, the verdict is contrary to and against the manifest weight of the evidence. Seventh, the answer of the jury to Special Interrogatories 2 and 3 is not supported by but is manifestly against and contrary to the evidence and is the result of passion and prejudice. Eighth, error in admitting evidence offered by plaintiff-appellee. Ninth, error in over-

ruling defendant's motion for judgment non obstante vere-dicto, and Tenth, error in overruling defendant's motion for new trial.

The petition avers that defendant is indebted to the plaintiff in the sum of $378.95 for work, labor, medicine and supplies between the dates heretofore set out which ·work, labor, medicine and supplies were furnished and performed "at the special instance and request of Rebecca Hickle" and for which services and supplies "Rebecca Hickle promised to pay" Robert Wampler.

Defendant answering, first interposed a general denial, secondly asserted that there was a family relationship existing between defendant's decedent and plaintiff, he being a nephew of decedent, and that the work was performed and services and materials provided by reason of that relationship. Upon trial, had the jury returned a general verdict for plaintiff in the amount prayed with interest and costs and answered three Special Interrogatories:

No. 1. "Do you find that the plaintiff, Robert Wampler, was ·a near relative of the defendant's decedent, Rebecca Hickle?"

which interrogatory was answered in the affirmative. The second interrogatory was answered in the negative. It is as follows:

No. 2. "Do you find that during the times set out in the petition that the plaintiff and the defendant's decedent, Rebecca Hickle, occupied the residence property located on East Main Street, Greenville, Ohio, which was owned by Rebecca Hickle, and that said Rebecca Hickle furnished and provided the house in which said parties lived and furnished all of the food, fuel, and utilities, and in consideration for this arrangement, the plaintiff performed certain tasks in connection with the home thus made?"

No. 3. "Do you find by clear and convincing proof that the defendant's decedent, Rebecca Hickle, expressly contracted to pay for the service so rendered by the plaintiff?"

This interrogatory was answered in the affirmative.
It is asserted in assignment of error No. 1, that the petition

declares upon an express contract and that there is no evidence whatever to support it nor to support the finding of the jury in answer to Interrogatory No. 3 and further that the general charge, that the jury might return a verdict for plaintiff upon proof of an implied contract, was highly prejudicial.

We have heretofore set out the material part of the petition, and we are not satisfied that it is a declaration upon an express contract.

Although there is but one form of civil action under code, pleading by the common counts is recognized and frequently followed. The plea of general assumpsit is recognized as a civil action upon an implied contract, whereas, special assumpsit is upon an express contract.

The indebitatus assumpsit count, is one of the counts under general assumpsit, a form of which appears in 3 O. Jur. 778, wherein it will be noted that the language employed is practically identical with that employed in the petition here. In states operating under the common law form of pleading, it is essential to sustain a cause of action that a promise to pay be averred, whether actual or fictitious and in an action on an implied contract, of course, the promise to pay is fictitious.

Bates on "Pleading, etc." at Page 2706, cites Anderson v Akins, 99 Neb. 630, for the proposition that

"Service at the request of the decedent and his promise to pay sustains either an express or implied promise",

and at Page 2697, in substance, that the cases are hopelessly at variance whether an express contract can be shown under a petition on an implied contract and vice versa, but that there is no generic difference between an express and implied contract except in the mode of proof, and that no variance should arise between averment and proof in the absence of an averment as to the character of proof to be produced. It is held in the third syllabus of **Railway Company v Gaffney, 65 Oh St 104,**

"Where it is averred in a petition that the plaintiff performed services for the defendant 'at his instance and request', the averment may be supported by evidence of the circumstances under which the services were performed tending to show a contract; evidence of an express request is not required."

The converse appears in **Gilmore, Admr. v Cross, 20 Oh Ap 127, 128.** Motion to certify overruled **23 O. L. R. 628.** The plaintiff had sued upon quantum meruit and the proof showed an express contract. The court held that this was not a fatal variance.

We are not put to the necessity of determining if the contract between the decedent and the plaintiff was such as is required in **Hinkle v Sage, 67 Oh St 256** or **Merrick v Ditzler, 91 Oh St 256,** because of the finding of the jury that a family relationship did not exist between the decedent and the plaintiff.

The issue of express contract was clearly brought into the case by the answer of the defendant. Upon the general verdict and the answers to the interrogatories, other than No. 3, proof of an implied contract supports the verdict and judgment.

It is not at all unusual that the jury would be confused and reach an improper conclusion as to the form of contract proved. There is, indeed, much difficulty presented by the record whether the contract proved is express or implied. Certainly, during most of the time the plaintiff was performing the services sued upon, he had no express contract with the decedent, but when she made the statement, on several occasions, in his presence, that she "wanted him paid for what he done", there is, indeed, presented a nice question as to whether this was not tantamount to an express contract to pay for what had been performed, and to pay for that which would be performed in the future. This is true, because the services performed before the statements were made, though if to be paid for were upon an implied contract, supported and afforded a consideration for the express promises made to the plaintiff, and, as he continued to carry on after promises made, it would be presumed in law that he accepted upon the terms implicit in the promise.

Inasmuch as the finding of the jury that there was an express contract is not essential to the verdict and judgment, and it is further apparent that the jury accepted the evidence of the plaintiff as to the existence of a contract, whatever its form, we are of the opinion that the Court committed no error **in admitting testimony tending to show an implied contract,** and that there **is no prejudicial error in the finding of the jury to the effect that there was an express contract proven,** nor was the **defendant prejudiced by the general charge that**

**proof of an implied contract** would support a verdict for the plaintiff.

Defendant tendered five special charges to be given before argument of counsel of which the court gave three, the third, the fourth and the fifth. It is urged that Charges Nos. 1 and 2 should also have been given to the jury. All three of these charges relate to the law as to family relationship between the parties under which the defendant insisted the services were performed. Charge No. 3 very fully and completely sets out the theory of the defendant. Charges Nos. 1 and 2 do not differ materially from No. 3. In this situation, we find no error in the refusal of the court to give these charges, inasmuch as they would have been to all intents and purposes a substantial repetition of Charge No. 3, which stated the law and was the longest and most comprehensive charge on the subject of the three tendered.

We have heretofore indicated that the court committed no error in his general charge relating to an implied contract.

Nor do we find that the verdict is contrary to or against the manifest weight of the evidence. There is ample support in the record upon the circumstances therein appearing and the express statements of defendant's decedent concerning payment for the services of plaintiff to support the action of the jury in returning its verdict for the plaintiff.

The record is novel in that, but for the answer of one witness for the defendant, Ellen Watt (p. 105), on cross-examination, there is no proof that the plaintiff was at the home of defendant's decedent prior to the first week in April, 1941, for any determinable period, and this wintess affords the proof only by reason of fixing the date when defendant's decedent came from the hospital as in January or February, 1941. A number of plaintiff's witnesses testified that plaintiff was at the home of defendant's decedent when she came home from the hospital but no one of them fixed that time. So that, but for the testimony of Ellen Watt there would have been proof only of the time covered in the petition from April to Decoration Day, 1941, and not from February to the last of May, or a period of nine weeks instead of more than twelve weeks which is the minimum required to support the amount of the verdict upon the evidence as to the value of plaintiff's services. Obviously, the jury awarded plaintiff $25.00 per week for fifteen weeks and $3.95 for supplies purchased by him.

598

It is urged that the court erred in admitting certain testimony of Mrs. Keltner to the effect that, after Mrs. Hickle in the hospital had expressed a desire to return to her home, the witness talked to defendant's decedent. The witness said she had talked to plaintiff but she did not say that he came at her suggestion although she states that he did come after the suggestion. This was competent testimony, not to bind the defendant's decedent on account of anything that was said by Mrs. Keltner but, as the court well stated, as it might reflect upon the relationship or the commencement of the relationship between the plaintiff and defendant's decedent. The court told the jury that Mrs. Keltner's request of plaintiff could not bind defendant's decedent. The testimony had probative effect upon the issue whether or not his going to the home of defendant's decedent and taking up the work there was merely upon the family relationship or upon another hypothesis namely, to perform services under circumstances which might support the finding of an implied contract between the parties.

It follows from what we have heretofore said that assignment of error No. 9 is not well made, namely, that the trial court erred in overruling defendant's motion for judgment non obstante veredicto, nor assignment No. 10, that the court erred in overruling defendant's motion for new trial.

The judgment will be affirmed.

BARNES, PJ. and GEIGER, J., concur.